IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DORIS AUSTIN,
   *Plaintiff*,

v.

BOARD OF EDUCATION OF
HOWARD COUNTY, *et al.*,
   *Defendants*.

Civil Action No. ELH-10-1185

**MEMORANDUM OPINION**

Dr. Doris Austin, plaintiff, was employed as a special education teacher at Mount View Middle School ("Mount View"), a public school in Howard County, from some time in the 2005-2006 school year until the end of the school year in 2008. She subsequently sued her former employer, the Board of Education of Howard County (the "Board"); Kathryn McKinley, the principal at Mount View; and an assistant principal at Mount View, Debra O'Byrne, defendants,[1] alleging discrimination on the basis of race,[2] creation of a hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. §§ 2000e *et seq.*), 42 U.S.C. § 1983, and Article 24 of the Maryland Declaration of Rights.[3]

---

[1] Plaintiff initially filed suit in the Circuit Court for Howard County, Maryland. Defendants removed the case to this Court in May 2010, on the basis of federal question jurisdiction. *See* Notice of Removal (ECF 1); 28 U.S.C. §§ 1331, 1441. The case was reassigned from Judge Motz to me in January 2011.

[2] Dr. Austin is African-American. Ms. McKinley and Ms. O'Byrne are white. *See* Complaint ¶¶ 1-4.

[3] In her Complaint (ECF 2), plaintiff alleged five separate counts: discrimination and hostile work environment under Title VII (Count I); hostile work environment under § 1983

Now pending is defendants' "Motion to Dismiss for Plaintiff's Failure to Comply with Court-Ordered Discovery Sanctions or, in the Alternative, Motion for Summary Judgment" (ECF 53), together with a memorandum in support thereof (ECF 53-1) (collectively, the "Motion"). Plaintiff has not filed an opposition to the Motion, and the time for her to do so has expired.[4] *See* Local Rule 105.2(a); Fed. R. Civ. P. 6(d). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. As I shall explain, I will grant the Motion, and direct that judgment be entered in favor of defendants.[5]

**Factual Background**

The following facts are drawn from the "Statement of Undisputed Material Facts" set forth in defendants' Motion. These facts must be construed in the light most favorable to plaintiff. However, as plaintiff has not responded to defendants' motion, no evidence has been placed before the Court to indicate that any of defendants' factual assertions are disputed.

Plaintiff was employed by the Board as a special education teacher and was assigned to Mount View for the three consecutive academic school years commencing prior to the start of the 2005-2006 school year and ending in or about June 2008. During her employment, plaintiff

---

(Count II); retaliation under Title VII (Count III); retaliation under § 1983 (Count IV); and violations of Article 24 (Count V).

[4] Plaintiff is now self-represented, although she was initially represented by counsel; her counsel withdrew from the representation, with leave of court, by Order of August 23, 2011. *See* ECF 44, 46. Upon the filing of defendants' Motion on October 24, 2011, the Clerk of the Court transmitted a letter to plaintiff advising her that, "[i]f this motion is granted, it could result in the dismissal of [plaintiff's] case or the entry of judgment against [her]," and referring her to procedural provisions governing motions practice in this court. ECF 54.

[5] Because defendants are entitled to judgment as a matter of law on the merits, I need not resolve their claim that plaintiff's complaint should be dismissed as a sanction for her failure to comply with the Court's prior orders regarding discovery.

was a non-tenured teacher.[6]

In the Howard County public schools, teacher performance is evaluated each academic school year, as required by Board policy. Specifically, the Board evaluates teacher performance in each of the following "domains": (1) interpersonal skills; (2) planning and preparation; (3) the classroom environment; (4) delivery of instruction; and (5) professional development. The Board utilizes several methods to evaluate teacher performance, including: (a) observations; (b) portfolio; (c) peer coaching; (d) cooperative program review; and (e) alternate year evaluation.

Non-tenured teachers are required to be evaluated by observation no less than four times per academic year. All teachers are routinely evaluated formally and informally. Announced and unannounced observations of teachers are also conducted as part of the overall evaluation of teacher performance. During her employment, plaintiff received informal and formal evaluations as well as announced and unannounced observations by her supervisors.

On or about January 19, 2007, a mid-year teacher evaluation of Dr. Austin's performance for the 2006-2007 school year was completed. Pursuant to that evaluation, plaintiff received a rating of unsatisfactory in three of the five domains in which she was evaluated, including planning and preparation (Domain 2), delivery of instruction (Domain 4), and professional responsibilities (Domain 5). Moreover, plaintiff received an overall rating of unsatisfactory. Contemporaneously, the Board implemented a Plan of Action ("Plan I") to address the deficiencies in Dr. Austin's teaching and "to assist Dr. Austin in the achievement of a

---

[6] During plaintiff's employment with the Board, a total of four special education professionals were assigned to Mount View, including: (a) plaintiff, an African-American female; (b) Nan Brown, a Caucasian female; (c) Donna MacDonald, an African-American female; and (d) Sandra Thompson, a Caucasian female. Ms. Brown and Ms. Thompson had attained tenured status prior to plaintiff's assignment to Mount View. Plaintiff and Ms. MacDonald were both non-tenured teachers during the 2007-2008 academic school year.

satisfactory evaluation . . . [in accordance with] the *Guide to Teacher Evaluation and Professional Development*." (Citation omitted.) The areas of need contained in Plan I were aligned with the domain areas in which plaintiff's performance had been deemed unsatisfactory, as set forth in her mid-year evaluation (i.e., Domains 2, 4 and 5). Plaintiff met with her supervisors to review Plan I.

On March 26, 2007, Mount View School Principal James Evans recommended that plaintiff's non-tenured, probationary status be extended for a third year. Accordingly, the Board extended plaintiff's non-tenured, probationary status into the 2007-2008 school year.

Dr. Austin did not successfully meet the objectives of Plan I.

On June 20, 2007, a teacher evaluation of plaintiff's performance for the 2006-2007 school was completed. Pursuant to that evaluation, plaintiff again received a rating of unsatisfactory in three of the five domains in which she was evaluated: planning and preparation (Domain 2); delivery of instruction (Domain 4); and professional responsibilities (Domain 5). And, once more, she received an overall rating of unsatisfactory. A second Plan of Action ("Plan II") was adopted to address the deficiencies in plaintiff's job performance. The domains in which Dr. Austin was deemed deficient were aligned with the domains identified in her end of year performance evaluation.

Principal Evans retired from the Howard County public school system, effective June 30, 2007, and Ms. McKinley became the principal of Mount View, effective July 1, 2007. Ms. McKinley inherited numerous responsibilities, including the required review and monitoring of Dr. Austin's Plan II. In accordance with Plan II, Principal McKinley held monthly conferences with Dr. Austin to evaluate her progress toward the objectives set forth in the plan. However,

plaintiff failed to successfully meet the objectives of Plan II. Additionally, observations of her job performance during the first few months of the 2007-2008 school year were unsatisfactory.

On November 1, 2007, plaintiff was placed on a third Plan of Action ("Plan III"). All five of the "domain" areas were identified as areas of need in Plan III. In addition to establishing a goal for plaintiff's second performance improvement plan, Plan III also set forth specific strategies for assistance in each of the domain areas. For instance, plaintiff was required to participate in monthly goal conferences with teachers and the administrative team to discuss her progress, receive frequent and periodic informal visits along with oral and written informal feedback, and submit weekly lesson plans (to include essential curriculum objects, etc.) to her assistant principal each Monday for the upcoming week.

On January 15, 2008, a mid-year teacher evaluation of Dr. Austin's performance for the 2007-2008 school year was completed. Pursuant to that evaluation, plaintiff received a rating of unsatisfactory in all five domains in which she was evaluated. And again, she received an overall rating of unsatisfactory.

Plaintiff filed an internal complaint of discrimination with Min Kim, Coordinator of Equity Assurance, at some point during her period of employment with the Howard County public schools.[7] Ms. Kim met with plaintiff several times in February and March 2008 to address plaintiff's expressed concerns of differential treatment by Mount View administrators. Following an investigation into plaintiff's claimed differential treatment, Ms. Kim reported to Dr. Austin that she found no evidence of plaintiff's claims of harassment and intimidation. On

---

[7] The exact date of the internal complaint is not disclosed in the record, but it appears from context that it likely was filed in early 2008.

May 8, 2008, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

In the meantime, on April 14, 2008, McKinley advised Dr. Austin in writing that she (Principal McKinley) would be recommending non-renewal of plaintiff's contract as a teacher with the Howard County public schools.

On June 5, 2008, Ms. McKinley completed a written Overview of Performance Record and Support for Plan of Action regarding Dr. Austin. In that document, McKinley summarized plaintiff's performance record for the entirety of her assignment to Mount View. In addition, McKinley expressed additional concerns regarding plaintiff's job performance. Ultimately, McKinley concluded that Dr. Austin's performance remained unsatisfactory. Accordingly, Principal McKinley noted that she "recommended non-renewal" for plaintiff upon approval by the Board. (Citation omitted.)

On or about June 15, 2008, plaintiff resigned from employment with the Howard County public schools. On June 26, 2008, the Board accepted plaintiff's resignation, noting an effective date of June 12, 2008.

## Discussion

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."

In resolving a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*,

290 F.3d 639, 644-45 (4th Cir. 2002); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (citation omitted).

The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 249 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248. The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

As noted, plaintiff alleges intentional racial discrimination and creation of a hostile work environment, as well as retaliation. None of her claims survives summary judgment.

### A.  Intentional Discrimination on the Basis of Race

In general, there are "two avenues" by which a plaintiff may prove intentional employment discrimination at trial. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). The first is to offer "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted). "To avoid summary judgment" when proceeding under ordinary principles of

proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (internal citations and quotation marks omitted; alteration in original).

The second avenue available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* scheme was created to resolve "the proper order and nature of proof" of discrimination at trial. *McDonnell Douglas*, 411 U.S. at 793. Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion . . . never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Rather, the *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981) ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

If the employee-plaintiff chooses to proceed under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an employee who was qualified for employment, "under circumstances which give rise to

an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253 (1981).[8]

If the plaintiff establishes a prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. Stated another way, if the employer produces evidence that could persuade a fact finder that it had a legitimate, non-discriminatory reason for its actions, "the defendant has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

When the defendant meets its burden, the plaintiff must offer evidence to show "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. *See also Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason

---

[8] In *McDonnell Douglas,* the prima facie case of racial discrimination in hiring was formulated as follows, 411 U.S. at 802:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

- 9 -

was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).[9]

Assuming, for the sake of argument, that plaintiff could establish a *prima facie* case of discrimination within the *McDonnell Douglas* framework, defendants have produced undisputed evidence demonstrating a legitimate, nondiscriminatory reason for the nonrenewal of plaintiff's contract.[10] Specifically, on multiple occasions, plaintiff's job performance was rated as unsatisfactory overall, and deficient across several "domains" of evaluation. Because plaintiff has not responded to defendants' Motion, the Court has no evidence before it that could show that plaintiff's poor performance ratings were pretexts for unlawful discrimination. Nor has plaintiff advanced any direct or indirect evidence of intentional discrimination under "'ordinary principles of proof.'" *Burns*, *supra*, 96 F.3d at 731 (citation omitted). Accordingly, summary judgment will be granted to defendants as to plaintiff's allegations of intentional discrimination.

---

[9] On the other hand, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," and the plaintiff has proved a prima facie case, "the court must award judgment to the plaintiff as a matter of law," *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original), because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3.

[10] Because plaintiff voluntarily resigned her employment before the Board acted on the recommendation not to renew her contract, there is a serious question whether plaintiff suffered an actionable adverse employment action at all. When "an employee voluntarily quits under circumstances insufficient to amount to a constructive discharge, there has been no 'adverse employment action.'" *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 775 (4th Cir. 1997). Moreover, a mere "poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.' An evaluation merely causing a loss of prestige or status is not actionable." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir.) (internal citations omitted), *cert. denied*, 543 U.S. 959 (2004). However, an "employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" *Honor v. Booz, Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004). I will assume, for the sake of argument, that plaintiff suffered an adverse employment action.

### B. Hostile Work Environment

A claim of hostile work environment is premised on the notion that "an employee's work environment is a term or condition of employment." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009) (internal citations and quotation marks omitted). "To survive summary judgment on a claim of a racially hostile work environment," a plaintiff must provide evidence of harassment by her co-workers, which a reasonable jury could find was "'(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere,'" and must also show "'that there is some basis for imposing liability' for the harassment on the employer." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 668 (4th Cir. 2011) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001)).

Here, plaintiff has advanced no evidence of any harassment whatsoever, let alone harassment by co-workers that was unwelcome, racially based, severe, or pervasive. Rather, as noted, the undisputed evidence is that plaintiff's job performance was evaluated negatively on multiple occasions. Performance evaluations (whether formal or informal) are a routine aspect of workplace life. Standing alone, negative performance evaluations cannot be construed as harassment.

### C. Retaliation

Plaintiff asserts causes of action for retaliation under Title VII, § 1983, and Article 24. "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th

Cir. 2010).

With respect to the causation element, there ordinarily must be "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). *But see Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'") (citation omitted). Conversely, mere temporal proximity is not necessarily enough to create a jury issue as to causation. "'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

Plaintiff's retaliation claims also arise under § 1983 and Article 24. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). However, courts have recognized claims under § 1983 for retaliation against a plaintiff for the plaintiff's exercise of rights conferred by other federal law. "A retaliation claim under 42 U.S.C.

§ 1983 must establish that the government responded to the plaintiff's constitutionally [or statutorily] protected activity with conduct or speech that would chill or adversely affect his protected activity." *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (2006).

Article 24 of the Declaration of Rights is Maryland's state constitutional guarantee of due process and equal protection of the law. *See, e.g.*, *Frey v. Comptroller*, 422 Md. 111, ___, 29 A.3d 475, 513 (2011); *Town of Easton v. Pub. Serv. Comm'n*, 379 Md. 21, 41 n.11, 838 A.2d 1225, 1237 n.11 (2003). I am unaware of a reported decision of the Maryland appellate courts expressly recognizing a claim for retaliation founded on Article 24. However, if such a claim were recognized, its contours would likely be similar to the standards that apply to retaliation claims under Title VII or § 1983.

Once again, plaintiff's retaliation claims fail because, assuming for argument's sake that plaintiff engaged in a protected activity and suffered an adverse employment action, she has not advanced any evidence of "a causal link between the protected activity and the employment action," *Coleman*, 626 F.3d at 190, or that the adverse employment action was a response "to the plaintiff's constitutionally [or statutorily] protected activity." *Baltimore Sun*, 437 F.3d at 416. To be sure, Ms. McKinley's ultimate decision not to recommend the renewal of plaintiff's contract occurred in close proximity to plaintiff's filing of her internal complaint and her charge of discrimination with the EEOC. But, plaintiff had previously received negative performance evaluations; indeed, they were received over the entire course of her tenure. Thus, there is no evidence of causation, other than temporal proximity. "Workers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of . . . poor performance." *Ziskie v. Mineta*, 547 F.3d

220, 229 (4th Cir. 2008).

## Conclusion

For the foregoing reasons, summary judgment will be granted to defendants as to all counts. An Order implementing this ruling follows.


Date: December 21, 2011           /s/
                                  Ellen Lipton Hollander
                                  United States District Judge